ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

MARK BERNSTEIN, individually and as
Parent and Natural Guardian of A.B., an Infant
under the age of 17 years,

                Plaintiff,

- against -

THE VILLAGE OF PIERMONT, MICHAEL
BETTMAN, DANNY GOSWICK, JR. and
SAM KROPP,

                Defendants.
---------------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: 10/21/13

**OPINION AND ORDER**

11 Civ. 3677 (ER)

Ramos, D.J.:

    Each of Defendants Michael Bettman, Danny Goswick, Jr. and Sam Kropp has moved for an order directing Defendant Village of Piermont to provide him with a defense and indemnity pursuant to Chapter 10 of the Village Code of the Village of Piermont. Docs. 27, 32, 37. For the reasons discussed below, the motions are GRANTED IN PART and DENIED IN PART.

    **I. Relevant Background**

    Plaintiff Mark Bernstein, individually and as parent of A.B., filed a Verified Complaint setting forth a civil rights action pursuant to 42 U.S.C. § 1983 ("Section 1983") against the Village of Piermont (the "Village") and Michael Bettman ("Bettman"), Danny Goswick, Jr. ("Goswick") and Sam Kropp ("Kropp"), volunteer firefighters with the Village Fire Department (the "Individual Defendants"). The Verified Complaint alleges false imprisonment, unlawful detention, assault, battery and intentional infliction of emotional distress. Doc. 1; Gilbert Aff. ¶ 21 (Doc. 18). The claims asserted in the Verified Complaint relate to a hazing incident that allegedly occurred on August 14, 2010, when A.B. was first beginning his service as a volunteer firefighter with the Village Fire Department. Compl. ¶¶ 3-5, 7, 13. The alleged incident resulted

in charges being filed against the Individual Defendants in this case.  Feerick Aff. Ex. K; Bettman Reply Mem. of Law in Supp. of Mot. 2; Kropp Reply Mem. of Law in Further Supp. of Mot. 6.

Plaintiff subsequently filed an Amended Complaint.  Doc. 2.  On July 8, 2011, the Village filed an Answer to the Amended Complaint, but did not interpose an answer on behalf of the Individual Defendants.  Doc. 5.  To date, the Individual Defendants have not filed answers to the Amended Complaint.

On April 15, 2013, Goswick moved the court for an Order requiring the Village to provide him with a defense and indemnity under Chapter 10 of the Village Code.  Doc. 27.  In support of the motion, Goswick argued 1) that the Village Code entitled him to defense and indemnity; 2) that the Village Code entitled him to private counsel by virtue of a conflict of interest between himself and the Village; 3) that, at a minimum, the Village had a duty to provide defense and indemnity by private counsel through the resolution of the motion; and 4) that he was entitled to representation by counsel of his choice (*i.e.*, that the proposed attorneys' fees were reasonable).  Goswick Mem. of Law in Supp. of Mot. 8-18.

Kropp filed his own motion for defense and indemnity the same day, and Bettman moved two days later.  Docs. 32, 37.  Both relied primarily on the arguments set forth in support of Goswick's first three points, and each provided separate information regarding their respective attorneys' proposed fees.  Affirmation of Michael K. Stanton, Jr. in Support of Mot.; Bettman Mem. of Law in Supp. of Mot.

The Village has since conceded Goswick's first two points with regard to its obligation to provide the Individual Defendants with a defense, though it argues that the question of indemnification is not yet ripe for review.  Aff. in Partial Supp. and Partial Opp'n ¶¶ 2, 6-7, 12.

2

The Village's position is that, while there is a conflict of interest between the Village and the Individual Defendants, there is no such conflict among the three individuals. *Id.* ¶¶ 6-7. Therefore, it intends to pay for a single private attorney to represent the three, absent a Court ruling to the contrary. *Id.* ¶ 7.

In response to the Village's arguments, the Individual Defendants have pointed to a number of potential conflicts of interest that they believe warrant separate counsel. Goswick argues that they have differing defenses and differing levels of exposure to punitive damages[1] and that this creates a conflict given the absence of an indemnification proposal. Feerick Reply Aff. ¶¶ 6, 11. He argues that they "saw different things, heard different things, said different things, and did different things," and that their respective positions within the Fire Department give them differing degrees of responsibility with respect to Department policy. *Id.* ¶¶ 7-8. In addition, he argues that Bettman's testimony would be more susceptible to impeachment because Bettman previously admitted to certain actions that Goswick and Kropp deny occurred. *Id.* ¶ 9. Bettman and Kropp also emphasize this final point, which stems from Bettman's having pled guilty to a violation in relation to the alleged incident. Bettman Reply Mem. of Law in Supp. of Mot. 2; Kropp Reply Mem. of Law in Further Supp. of Mot. 6. Related charges against Goswick and Kropp were dismissed. Feerick Aff. Ex. K; Kropp Reply Mem. of Law in Further Supp. of Mot. 6. Bettman observed that his plea could induce the other two individuals to blame him for the incident. Bettman Reply Mem. of Law in Supp. of Mot. 2-3.

---

[1] Plaintiff has not expressly asserted a claim to recover punitive damages, but his Amended Verified Complaint does allege, *inter alia*, wanton and willful conduct on the part of the Individual Defendants. Am. Verified Compl. ¶ 13.

Kropp's reply noted two additional potential conflicts: a potential for divergent testimony between Goswick and Kropp, and the unique financial positions of the respective parties. Kropp Reply Mem. of Law in Further Supp. of Mot. 6-7, 8.

In its response to the present motions, the Village also asks the Court to order the Village's insurer to cover the costs of the Individual Defendants' defense. Aff. in Partial Supp. and Partial Opp'n ¶ 11. By letter dated May 24, 2013, counsel for the insurance company took the position that the Village's request was improper in the context of the present action. Doc. 59. The Village's counsel responded with a letter dated June 13, 2013. That letter pointed to the All Writs Act, 28 U.S.C. § 1651, as a basis for the proposition that the Court can issue writs affecting third parties. Doc. 60.

## II. Discussion

*Conflict Among the Individual Defendants*

Because the parties now agree 1) that the Village must provide the Individual Defendants with a defense and 2) that the Individual Defendants are entitled to counsel of their choice, the core question remaining before the Court is whether or not there exists a conflict among the Individual Defendants such that the Village must pay for each to retain separate counsel.

The Village Code permits the Village to "require, as a condition to payment of the fees and expenses of such representation by private counsel, that appropriate groups of such employees be represented by the same counsel." Village of Piermont, N.Y., Code § 10-2(C)(2). In interpreting a substantially similar provision of the New York Public Officers Law, this Court found that employees were appropriately grouped when "the claims against each arise from the same incident and involve the same defenses." *Fanelli v. Town of Harrison*, 46 F. Supp. 2d 254, 260 (S.D.N.Y. 1999). Here, Bettman has pled guilty to a violation with respect to the alleged

4

incident, while charges against Goswick and Kropp were dismissed. The motion papers suggest that Goswick and Kropp intend to take the position that the alleged events did not occur or that, if they did, Goswick and Kropp did not participate in them, thus opening the door for inconsistent testimony and finger-pointing among the three Individual Defendants.  The incentive for the three to take adverse positions and to attempt to shift blame among one another is heightened by their potential exposure to punitive damages and the Village's uncertain position regarding indemnification.

This type of potential for liability-shifting has been found to create a "genuine and serious possibility" that a conflict of interest will emerge. *Baker v. Gerould*, 03-CV-6558L, 2005 WL 2406003, at *6 (W.D.N.Y. Sept. 29, 2005) ("In this case, while each defendant may defend himself by denying or challenging the government's proof of the existence of the alleged conspiracy, some of them may also argue alternatively that, even if an alleged conspiracy is proved, they were not a part of it."). *Baker* was a Section 1983 case in which the plaintiff sought to disqualify the State Attorney General's Office from representing the individual defendants. Although the court denied plaintiff's motion, it did so on the condition that each defendant be advised of the potential conflict and affirmatively waive his right to conflict-free counsel. *Id.* at *6-7.  Here, the Individual Defendants' motions strongly suggest that any such waiver could not be obtained.

Although the Court cannot predict with certainty that the three Individual Defendants will assume adverse positions, the likelihood that they will do so appears serious enough as to require separate counsel.  In the leading Second Circuit case on dual representation in the Section 1983 context, that court observed that an "imminent threat of a serious conflict" would warrant disqualification of counsel prior to the commencement of the proceedings. *Dunton v. County of*

*Suffolk*, 729 F.2d 903, 907 *amended*, 748 F.2d 69 (2d Cir. 1984). This Court has similarly required separate counsel on the basis of a potential conflict. *See Ricciuti v. New York City Transit Auth.*, 796 F. Supp. 84, 88 (S.D.N.Y. 1992) ("Conceptually at least, the officers could claim a good faith, qualified immunity based in part on improper or inadequate training. Thus, it is a defense that may be good for the officer but bad for the City. That represents a potential conflict. The Corporation Counsel must accordingly offer separate representation to [the individual defendant]."). Though these cases dealt with conflicts between individual defendants and a municipality, there is no apparent reason why a higher threshold should be imposed in assessing conflicts among individuals. Indeed, the *Fanelli* Court declined to require separate counsel on the basis that the defendants failed to identify "any actual *or potential* conflict . . . that would require" individual representation. *Fanelli*, 46 F. Supp. at 260 (emphasis added).

Because the potential conflict of interest among the three Individual Defendants is sufficiently serious as to render joint representation inappropriate in this case, the Individual Defendants' motions are granted insofar as to require the Village to provide each with separate counsel of their choosing.

*Indemnification*

The Individual Defendants' motion papers also take the position that the Village is required to indemnify them against adverse judgments. The Court agrees with the Village's position that the question of indemnification is not yet ripe for review. Therefore, the Individual Defendants' motions on this point are denied without prejudice.

*Reasonableness of Attorneys' Fees*

Similarly, the Individual Defendants' papers include arguments regarding the reasonableness of their respective attorneys' fees. At present, there does not appear to be a

6

justiciable controversy over this issue. The Village has indicated that, "[i]f the Court should find that a conflict does exist, Piermont will pay reasonable costs as are necessary." Aff. in Partial Supp. and Partial Opp'n ¶ 7. The Village Code provides that "[a]ny dispute with respect to . . . the reasonableness of attorneys' fees shall be resolved by the court upon motion or by way of a special proceeding." Village of Piermont, N.Y., Code § 10-2(C)(2)(c). With respect to the present motions, the Village took the position that it was not required to provide each of the Individual Defendants with separate counsel; it has not taken any position regarding the reasonableness of the attorneys' fees. Given the absence of a dispute on this point, the Court declines to reach the question of the reasonableness of the proposed fees.

### III. Additional Issue Raised by the Village

The Village's response to the Individual Defendants' motions also asked the Court to issue an order with respect to the Village's insurer's alleged obligation to cover the Individual Defendants' defense costs. Though the Village's motion papers do not proffer a legal theory under which the Court would be authorized to issue such an order in the context of the present proceedings, Village counsel's June 13, 2013 letter points to the All Writs Act as a basis for the requested action.

The All Writs Act provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a) (2012). The Court does not read this language so broadly as to authorize orders of the sort requested here. The Supreme Court had the following to say in discussing the scope of the All Writs Act:

> The power conferred by the Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper

>administration of justice and encompasses even those who have not taken any affirmative action to hinder justice.

*United States v. New York Tel. Co.*, 434 U.S. 159, 174 (1977) (citations omitted); *see also Benjamin v. Malcolm*, 803 F.2d 46, 53 (2d Cir. 1986) (suggesting that *New York Telephone*'s discussion of third parties applies only in "exceptional circumstances"). *New York Telephone* involved an order requiring a telephone company to assist law enforcement officials in employing court-authorized pen registers. *Id.* at 161. In the course of its analysis, the Supreme Court observed that there was "no conceivable way" that the purpose of the pen register order could be accomplished without the company's assistance. *Id.* at 175. Here, by contrast, the insurer's refusal to fund the Individual Defense would not "frustrate the implementation" of this Court's Order; it would merely mean that the Village must bear the cost directly, at least for the time being.

Similarly, *In re WorldCom*, which Village counsel points to specifically in his letter, dealt with an order enjoining a state court from conducting a trial while a related class action suit was ongoing in this Court. *In re WorldCom, Inc. Sec. Litig.*, 315 F. Supp. 2d 527, 529 (S.D.N.Y. 2004), *rev'd sub nom. Ret. Sys. of Ala. v. J.P. Morgan Chase & Co.*, 106 F. App'x 754 (2d Cir. 2004).[2] Though *WorldCom* was reversed on appeal, there are indeed other situations in which state court proceedings have been enjoined on the basis of the All Writs Act. *See, e.g.*, *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 337-38 (2d Cir. 1985) (finding that state court actions could threaten the district court's ongoing settlement efforts). Again, these types of cases are readily distinguishable from the one at hand, as they

---

[2] The Second Circuit subsequently issued a full opinion explaining its reversal of the district court's ruling. *Ret. Sys. of Ala. v. J.P. Morgan Chase & Co.*, 386 F.3d 419 (2d Cir. 2004).

address situations in which concurrent state court proceedings could quite literally "frustrate" a federal court's ability to exercise its jurisdiction over a particular action.

As this Court has previously put it, the language of the All Writs Act "encompasses orders imposed against third parties to the extent such parties are poised to interfere with the implementation of a prior judicial order." *United States v. Mason Tenders Dist. Council of Greater N.Y.*, 205 F. Supp. 2d 183, 188 (S.D.N.Y. 2002). Thus, while counsel is correct in noting that courts have relied on the All Writs Act in issuing orders affecting third parties, such reliance is inapposite for present purposes. The insurance issue raised in the Village's papers goes to the question of who must ultimately bear the cost of the Village's obligation to provide the Individual Defendants with a defense; it does not affect the Village's obligation to fund that defense in the first instance. In other words, the Court's ruling on the present motions speaks only to the Village's obligations with respect to the Individual Defendants. Whether the Village has a claim against a third party that would permit it to recover the costs of meeting those obligations is a separate question, one that would involve a substantive ruling on the merits of the apparent insurance dispute. In the Court's view, it is neither "necessary" nor "appropriate" for the Court to resolve that dispute at this juncture.

Because the Village's insurer is not party to this action, and because the insurance issue is distinct from those raised by the present motions, the Court will not rule on the insurer's potential liability.

### IV. Conclusion

For the foregoing reasons, the Individual Defendants' motions to direct defense are GRANTED. Defendant Village of Piermont is ordered to provide each Individual Defendant with private counsel of his choosing. The motions to direct indemnity are DENIED WITHOUT

PREJUDICE.  The Clerk of the Court is respectfully directed to terminate the motions (Docs. 27, 32, 37).

SO ORDERED.

Dated:   October 21, 2013
         New York, New York

                                                         _____
                                                         Edgardo Ramos, U.S.D.J.